**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

| | |
|---|---|
| **E-C-R-**, | Case No. 3:25-cv-1230-SI |
| Plaintiff, | Agency No. AXXX-XXX-838 |
| v. | **OPINION AND ORDER GRANTING PRELIMINARY INJUNCTION** |
| **KRISTI NOEM**, in her official capacity as Secretary, U.S. Department of Homeland Security; **ANGELICA ALFONSO-ROYALS**, in her official capacity as Acting Director of U.S. Citizenship and Immigration Services; and **JOSEPH E. KERNAN**, in his official capacity as Director, U.S. Citizenship and Immigration Services Asylum Vetting Center, | |
| Defendants. | |

Philip James Smith and Nicole Hope Nelson, NELSON SMITH LLP, 1123 SW Yamhill Street, Portland, OR 97205. Of Attorneys for Plaintiff.

Scott E. Bradford, United States Attorney, and Susanne Luse, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Ave., Suite 600, Portland, Oregon 97204. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

Plaintiff E-C-R- is a citizen of Colombia who was stalked and raped by a cartel member

and fled persecution in her home country. She arrived in the United States on May 16, 2022. On

May 17, 2022, she was determined to be inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I),

because she did not have a visa or other valid entry document. She was detained by U.S.

Customs and Border Protection ("CBP"). The government, however, never issued an order of

PAGE 1 – OPINION AND ORDER

removal and instead released her on parole in May 2022, and then issued her an order of release on her own recognizance in June 2022. The government did not schedule a credible fear interview or commence removal proceedings (or any other proceedings). Plaintiff then affirmatively applied for asylum and for withholding of removal through a form I-589 Application ("I-589 Application"). The government issued her an Employment Authorization Document ("EAD"), valid through March 7, 2029. Plaintiff periodically checked in with U.S. Immigration and Customs Enforcement ("ICE").

On June 9, 2025, the United States Citizenship and Immigration Services ("USCIS") sent Plaintiff a Notice of Dismissal of her I-589 Application. The sole basis that USCIS gave for the denial of Plaintiff's I-589 Application was that the records of the Department of Homeland Security ("DHS") indicate that she was "apprehended by DHS officials, placed in expedited removal, and issued a Form I-860, Notice and Order of Expedited Removal."

On July 14, 2025, Plaintiff brought this lawsuit, alleging that Defendants violated 8 U.S.C. § 1158(a)(1) and the Administrative Procedure Act ("APA") in denying Plaintiff's I-589 Application. On July 16, 2025, the Court issued a temporary restraining order ("TRO") under the All Writs Act, precluding Defendants from arresting, detaining, or deporting Plaintiff for 14 days. The parties stipulated to extending the TRO through the resolution of Plaintiff's motion for preliminary injunction.

Now before the Court is Plaintiff's motion for preliminary injunction. Plaintiff requests that the Court order Defendants to rescind the June 9, 2025 dismissal of Plaintiff's I-589 Application and prevent Defendants from arresting and detaining Plaintiff while her I-589

Application is pending.[1] After briefing and oral argument, for the reasons below, the Court

grants in part Plaintiff's motion.

### STANDARDS

**A. General Standard for Preliminary Injunctive Relief**

"A plaintiff seeking a preliminary injunction must demonstrate that she is likely to

succeed on the merits, irreparable harm in the absence of preliminary relief, that the balance of

equities tips in her favor, and that an injunction is in the public interest." *Bates v.

Pakseresht*, 146 F.4th 772, 783 (9th Cir. 2025) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555

U.S. 7, 20 (2008)). "When the government is a party, the last two factors (equities and public

interest) merge." *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 668 (9th Cir. 2021).

A preliminary injunction also "may issue where 'serious questions going to the merits

were raised and the balance of hardships tips sharply in plaintiff's favor' if the plaintiff 'also

shows that there is a likelihood of irreparable injury and that the injunction is in the public

interest.'" *Planned Parenthood Great Nw., Haw., Alaska, Ind., Ky. v. Labrador*, 122 F.4th 825,

844 (9th Cir. 2024) (quoting *All. for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1135 (9th

Cir. 2011)). The Ninth Circuit has a "'sliding scale' approach, in which 'the elements of the

preliminary injunction test are balanced, so that a stronger showing of one element may offset a

weaker showing of another.'" *Id.* (quoting *All. for the Wild Rockies*, 632 F.3d at 1131). In

addition, "[d]ue to the urgency of obtaining a preliminary injunction at a point when there has

been limited factual development, the rules of evidence do not apply strictly to preliminary

---

[1] At oral argument, Plaintiff withdrew her request for a preliminary injunction order that
Defendants schedule an asylum interview for Plaintiff.

injunction proceedings." *Herb Reed Enters., LLC v. Florida Entmt. Mgmt., Inc.*, 736 F.3d 1239, 1250 n.5 (9th Cir. 2013); *see also Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009).

The already high standard for granting a preliminary injunction is further heightened when the type of injunction sought is a "mandatory injunction." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (noting that the burden is "doubly demanding" for a mandatory injunction). To obtain a mandatory injunction, a plaintiff must "establish that the law and facts *clearly favor* her position, not simply that she is likely to succeed." *Id.* (emphasis in original).

## B. Administrative Procedure Act

As relevant here, under the APA, a court must "hold unlawful and set aside agency action, findings, and conclusions found to be—arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A), (C). Agency action is

> arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

"[T]he touchstone of 'arbitrary and capricious' review under the APA is 'reasoned decisionmaking.'" *Altera Corp. & Subsidiaries v. Comm'r of Internal Revenue*, 926 F.3d 1061, 1080 (9th Cir. 2019) (quoting *State Farm.*, 463 U.S. at 52). "[A]n agency's action can only survive arbitrary or capricious review where it has articulated a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *All. for the Wild Rockies v. Petrick*, 68 F.4th 475, 493 (9th Cir. 2023) (cleaned up); *see also Gill v. U.S.*

PAGE 4 – OPINION AND ORDER

*Dep't of Justice*, 913 F.3d 1179, 1187 (9th Cir. 2019) ("An agency must 'examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made.'" (quoting *State Farm*, 463 U.S. at 43). *Post-hoc* rationalizations cannot justify an agency's actions. *See Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 419 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977).

The Court affords no deference to an agency's legal determinations. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 391-92 (2024). Otherwise, however, a reviewing court's inquiry into agency action must be "thorough," but "the standard of review is highly deferential; the agency's decision is 'entitled to a presumption of regularity,' and [the court] may not substitute [its] judgment for that of the agency." *San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 601 (9th Cir. 2014) (quoting *Volpe*, 401 U.S. at 415). Although a court's review of these issues is deferential, the court "must engage in a careful, searching review to ensure that the agency has made a rational analysis and decision on the record before it." *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 524 F.3d 917, 927 (9th Cir. 2008). A court "must not 'rubber-stamp' . . . administrative decisions that [it] deem[s] inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute." *Ocean Advocates v. U.S. Army Corps of Eng'rs*, 402 F.3d 846, 859 (9th Cir. 2005) (first alteration in original, remaining alterations added). A court, however, may "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Gill*, 913 F.3d at 1187-88 (quoting *State Farm*, 463 U.S. at 43).

The Supreme Court has often observed that the reasoned decisionmaking requirement includes a duty to explain any "departure from prior norms." *Atchison, Topeka & Santa Fe Ry. Co. v. Wichita Bd. of Trade*, 412 U.S. 800, 808 (1973); *see also Int'l Union, UAW v. NLRB*, 802

F.2d 969, 973-74 (7th Cir. 1986) ("[A]n administrative agency is not allowed to change direction without some explanation of what it is doing and why."). "Unexplained inconsistency" between agency actions is "a reason for holding an interpretation to be an arbitrary and capricious change." *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 981 (2005).

## BACKGROUND

### A.  Relevant Statutory Framework

The Immigration and Naturalization Act ("INA") establishes the framework governing noncitizens' entry into and removal from the United States, with regulations promulgated by the enforcing agencies providing further governance.

### 1.  Asylum Applications Generally

Any noncitizen may apply for asylum if "physically present in the United States or who arrives in the United States (*whether or not at a designated port of arrival . . .*) *irrespective of such alien's status*," under § 1158 or, where applicable, § 1225(b).[2] 8 U.S.C. § 1158(a)(1) (emphasis added). Asylum is granted if the Secretary of Homeland Security or Attorney General determines that the noncitizen is a "refugee," *id.* § 1158(b)(1)(A), which is defined in relevant part as a person "unable or unwilling to return to" their home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion," *id.* § 1101(a)(42)(A).

If a noncitizen is in removal proceedings, an immigration judge has jurisdiction over an asylum application. *See* 8 C.F.R. § 208.2(b). If not in removal proceedings and "physically present in the United States or seeking admission at a port-of-entry," then USCIS has

---

[2] An "alien" is "any person not a citizen or national of the United States." 8 U.S.C. § 1101(a)(3). This Opinion and Order generally refers to as "noncitizens" what the INA references as "aliens."

jurisdiction. *Id.* § 208.2(a)(1)(i). USCIS also has initial jurisdiction over asylum requests through expedited removal under § 1225(b), discussed below. *Id.* § 208.2(a)(1)(ii).

Section 1158 and its implementing regulations establish a general framework for processing asylum applications. *See* 8 U.S.C. § 1158(d). Under the statute, the Secretary of DHS[3] "shall establish a procedure for the consideration of asylum applications." *Id.* § 1158(d)(1). The Secretary "may" issue an employment authorization and "shall" issue certain notices. *Id.* § 1558(d)(2), (4). Absent exceptional circumstances, "the initial interview or hearing on the asylum application shall commence not later than 45 days after the date an application is filed" and "final administrative adjudication of the asylum application, not including administrative appeal, shall be completed within 180 days after the date an application is filed." *Id.* § 1158(d)(5)(A)(ii)-(iii). When USCIS (rather than an immigration judge) has jurisdiction over an asylum claim, it "shall adjudicate the claim" when the application is complete, in accordance with § 1158. 8 C.F.R. § 208.9(a). When USCIS has jurisdiction over an asylum application and the asylum officer, after review within USCIS, "does not grant asylum to an applicant after an interview conducted in accordance with § 208.9 . . . the asylum officer shall deny, refer, or dismiss the application," generally by referring the application to an immigration judge for adjudication in removal proceedings. *Id.* § 208.14(c).

---

[3] "The provision refers to the Attorney General, but the authority it confers has been transferred to the Secretary of Homeland Security." *Biden v. Texas*, 597 U.S. 785, 792 n.1 (2022) (citing *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 109 n.3 (2020)).

### 2. Inspection, Detention, and Requests for Asylum under § 1225[4]

A noncitizen who is "present in the United States who has not been admitted or who arrives in the United States" is deemed an "applicant for admission" under § 1225. *See* 8 U.S.C. § 1225(a)(1). Certain applicants for admission are subject to expedited removal, which is a streamlined process for deporting a noncitizen with fewer due process protections than removal under 8 U.S.C. § 1229a. *See, e.g.*, 8 C.F.R. §§ 208.30, 235.3(b). Under § 1225, there are two general categories of applicants for admission who are eligible for expedited removal.[5] The first includes noncitizens who "[are] arriving in the United States." 8 U.S.C. § 1225(b)(1)(A)(i); *see also* 8 C.F.R. § 235.3(1)(i). The second are noncitizens designated by the Secretary of DHS for expedited removal. *See* 8 U.S.C. § 1225(b)(1)(A) (incorporating by reference *id.* § 1225(b)(1)(A)(iii)). The Secretary may designate a noncitizen who "has not been admitted or paroled into the United States" and has not been continuously present in the United States for two years immediately preceding the determination of inadmissibility. *Id.* § 1225(b)(1)(A)(iii)(II); *see also* 8 C.F.R. § 235.3(b)(1)(ii). Additionally, to be subject to expedited removal in either category, a noncitizen must be found inadmissible under 8 U.S.C. § 1182(a)(6) or (7).[6]

---

[4] The Court discusses this general statutory and regulatory framework for persons seeking admission, and does not discuss special circumstances, such as for stowaways.

[5] Other sections of the INA establish other eligible categories for expedited removal, such as 8 U.S.C. § 1228, expedited removal of noncitizens convicted of committing aggravated felonies.

[6] The INA has many categories of "inadmissibility." *See generally* 8 U.S.C. § 1182. Noncitizens who are present without being admitted or paroled, who arrive at a time or place not designated by the Secretary of DHS, who fail to attend immigration proceedings, who make misrepresentations relating to their immigration proceedings, who are stowaways, who are smugglers, or who abuse a student visa are deemed "inadmissible" under 8 U.S.C. § 1182(a)(6). Noncitizens who are in the country without valid unexpired documents or arrive at a port of entry without a visa or other entry document are deemed "inadmissible" under 8 U.S.C. § 1182(a)(7).

Persons eligible for expedited removal who express an intent to seek asylum are referred for an interview by an asylum officer. 8 U.S.C. § 1225(b)(1)(A)(ii). This interview is to "screen the alien for a credible fear of persecution or torture." 8 C.F.R. § 208.30(a). The noncitizen may consult with people and bring them to the credible fear interview. *Id.* § 208.30(d)(4). At the discretion of the asylum officer, those consultants may give a statement at the end of the interview, which may be limited in time by the asylum officer. *Id.* This is in contrast, however, to regular removal proceedings under 8 U.S.C. § 1229a, in which noncitizens may have an attorney represent them. Asylum interviews in expedited removal are conducted at a port of entry or other location designated by the Secretary of DHS. 8 U.S.C. § 1225(b)(1)(B)(i).

If the asylum officer finds that the noncitizen has a credible fear of persecution, USCIS may issue a Form I-862 Notice to Appear for "full consideration" of the asylum application in regular removal proceedings under § 1229a; otherwise, at the "complete discretion" of USCIS, it may retain jurisdiction for a truncated hearing. 8 C.F.R. § 208.30(f); *see also id.* § 208.2(a)(1)(ii) (stating that USCIS has jurisdiction for interviews to "further consider the application for asylum of an alien . . . found to have a credible fear of persecution or torture in accordance with § 208.30(f)"). If USCIS retains jurisdiction, it must schedule the next interview between 21 and 45 days from service of the positive credible fear determination. *Id.* § 208.9(a)(1). The asylum officer then must issue a decision within 60 days from service of the positive credible fear determination. *Id.* § 208.9(e)(2).

If the asylum officer finds that the noncitizen does not have a credible fear of persecution,[7] the noncitizen may request review by an immigration judge. *Id.* § 208.30(g); *see*

---

[7] The decision of an asylum officer will not be final until reviewed by a supervisory asylum officer. 8 C.F.R. § 208.30(e)(8).

*also* 8 U.S.C. § 1225(b)(1)(B). Review by an immigration judge must be conducted within seven days and can be done in person, by telephone, or by video. 8 U.S.C. § 1225(b)(1)(B)(iii)(III). No further administrative appeal or collateral court attack is allowed. *Id.* § 1225(b)(1)(C), (D). A noncitizen in expedited removal seeking asylum is subject to mandatory detention. *Id.* § 1225(b)(1)(B)(iii)(IV).

An "applicant for admission" who is not eligible for or placed in expedited removal "shall be detained for a proceeding under section 1229a of this title." *Id.* § 1225(b)(2)(A). In other words, those noncitizens are placed in normal removal proceedings, subject to mandatory detention.

The INA, however, has a subsection titled "Temporary admission of nonimmigrants," which allows noncitizens, even those in mandatory detention, to be "paroled" into the United States. *See generally* § 1182(d). This subsection establishes "parole" under certain conditions for "any alien applying for admission to the United States." *See* 8 U.S.C. § 1182(d)(5)(A). "Notably, every Administration beginning in the late 1990s has relied heavily on the parole option, including the administrations of Presidents Clinton, Bush, Obama, Trump [first administration], and Biden." *Biden v. Texas*, 597 U.S. 785, 815 (2022) (Kavanaugh, J., concurring). Parole under § 1182(d)(5)(A) is not itself valid for work authorization, but noncitizens who are paroled are eligible to apply for work authorization by submitting Form I-765. *See* USCIS, Employment Authorization (describing Form I-765 categories) ("USCIS EAD Categories"), https://www.uscis.gov/employment-authorization (last updated Sept. 6, 2023). When a work authorization is approved for a person under § 1182(d)(5) parole, the approval classification is C11. *See, e.g., id.*; Employment Authorization Document Code Table ("EAD Code Table"), https://otda.ny.gov/policy/directives/2019/INF/19-INF-07-Attachment-4.pdf (last visited Mar. 17, 2026).

PAGE 10 – OPINION AND ORDER

### 3. Regular § 1229a Removal Proceedings and Detention under § 1226

"The usual removal process involves an evidentiary hearing before an immigration judge, and at that hearing an alien may attempt to show that he or she should not be removed. Among other things, an alien may apply for asylum on the ground that he or she would be persecuted if returned to his or her home country." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020); *see also* 8 U.S.C. § 1229a (establishing the framework for "removal proceedings," which "decid[e] the inadmissibility or deportability of an alien," including the ability to apply for relief from removal). "Proceedings are initiated under 8 U.S.C. § 1229(a), also known as 'full removal,' by filing a Notice to Appear with the Immigration Court." *Salcedo Aceros v. Kaiser*, 2025 WL 2637503, at *1 (N.D. Cal. Sept. 12, 2025) (quoting *Matter of E-R-M- & L-R-M-*, 25 I. & N. Dec. 520, 520 (BIA 2011)); *see also* 8 U.S.C. § 1229 (titled "Initiation of Removal Proceedings") (establishing, among other things, that "[i]n removal proceedings under section 1229a of this title, written notice (in this section referred to as a 'notice to appear') shall be given in person to the alien" providing specific information).

Section 1226(a) provides for release on "bond" while a noncitizen is in removal proceedings, *see* 8 U.S.C. § 1226(a)(2)(A), and for "conditional parole" (also known as release on recognizance), *see id.* § 1226(a); *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007) (explaining that the ICE forms "use[] the phrase 'release on recognizance' as another name for 'conditional parole' under § 1226(a)"). "Parole pursuant to § 1182(d)(5)(A) is a distinct procedure from conditional release pursuant to § 1226(a)." *Chavarria v. Chestnut*, 2025 WL 3533606, at *3 (E.D. Cal. Dec. 9, 2025); *see also Hasan v. Crawford*, 800 F. Supp. 3d 641, 655 (E.D. Va. Sept. 19, 2025) ("Release on recognizance pursuant to § 1226(a)(2)(B) is 'legally distinct' from parole into the United States pursuant to § 1182(d)(5)(A)." (quoting *Matter of Cabrera-Fernandez*, 28 I. & N. Dec. 747, 749 (BIA 2023))).

### 4. The Government's Recent Change in Position

"Until this year, the DHS has applied § 1226(a) and its discretionary release and review of detention to the vast majority of noncitizens allegedly in this country without valid documentation." *Salcedo Aceros*, 2025 WL 2637503, at *3. The Trump administration, however, revised its § 1225 designation to "apply expedited removal to the *fullest extent authorized by statute*." Designating Aliens for Expedited Removal, 90 Fed. Reg. 8139 (Jan. 24, 2025) (emphasis added). This included dismissing ongoing asylum cases and placing noncitizens into expedited removal, including those who previously had been released under § 1226(a) or paroled under § 1182(d)(5). *See, e.g.*, *Salcedo Aceros*, 2025 WL 2637503, at *4 ("Since mid-May of 2025, the Department of Homeland Security has made a practice of appearing at regular removal proceedings in immigration court, moving to dismiss the proceedings, and then re-arresting the individual in order to place them in expedited removal proceedings. If the immigration judge does not dismiss the full removal proceedings, ICE still makes an arrest, apparently in reliance on § 1225(b)(2)'s detention provision." (citation omitted)); *Rodriguez Cabrera v. Mattos*, 2025 WL 3072687, at *3 (D. Nev. Nov. 3, 2025) (describing DHS's "sweeping new policy [that] subjects *millions* of undocumented residents to prolonged detention without the opportunity for release on bond, in contravention of decades of agency practice and robust due process protections hitherto afforded to such residents to enable them to challenge the government's basis for detaining them" (emphasis in original)). Courts overwhelmingly have rejected this process as unlawful, whether the noncitizen originally was released under § 1226(a) or § 1182(d)(5). *See Rodriguez Cabrera*, 2025 WL 3072687, at *3 (explaining that "[t]he overwhelming majority of district courts across the country, including this Court, that have considered the government's new statutory interpretation have found it incorrect and unlawful" (gathering cases)); *see also Perez v. LaRose*, 2025 WL 3171742, at *4 (S.D. Cal. Nov. 13, 2025)

PAGE 12 – OPINION AND ORDER

(gathering cases); *Faizyan v. Casey*, 2025 WL 3208844, at \*5 (S.D. Cal. Nov. 17, 2025) (gathering cases).

President Trump's first administration and current administration also have entered into Asylum Cooperative Agreements ("ACA"), under which the United States agrees with third countries to send noncitizens who seek asylum in the United States to that third country. On November 19, 2019, DHS and the U.S. Department of Justice adopted a joint interim final rule entitled "Implementing Bilateral and Multilateral Asylum Cooperative Agreements Under the Immigration and Nationality Act." 84 Fed. Reg. 63994.[8] This rule expanded ACAs beyond the existing U.S.-Canada agreement. *Id.* at 63996. The rule explained that ACAs, known as "safe third country agreements," only applies when the third country ensures that the asylum applicant "would have access to a full and fair procedure for determining a claim to asylum." *Id.* at 63994.

The rule establishes that the Attorney General and Secretary of DHS have the sole discretion to "make a categorical determination" whether a country offers a full and fair asylum process and thus is a "safe" country, without any standards for that determination.[9] *Id.* at 63997; *see also* Gerald L. Neuman, THE AFTERLIFE OF "TITLE 42": AUTOPSY AND REFORMATION, 33 Tul. J. Int'l & Comp. L. 329, 337 (2025) (explaining that the Trump administration "negotiated 'Asylum Cooperative Agreements' with Guatemala, Honduras, and El Salvador for sending them

---

[8] The current Trump administration ratified this rule on September 2, 2025. *See* 90 Fed. Reg. 42309.

[9] Congress established the "safe third country" exception to a noncitizen's right to apply for asylum in 8 U.S.C. § 1158(a)(2)(A). In that statute Congress described the exception as applying when the noncitizen "may be removed, pursuant to a bilateral or multilateral agreement" to a third country "in which the alien's life or freedom would not be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion, and where the alien would have access to a full and fair procedure for determining a claim to asylum or equivalent temporary protection." *Id.* The Court does not decide here whether the interim rule implemented in 2019 and ratified in 2025 complies with this statute or the APA.

asylum seekers from other countries despite their lack of functional refugee determination systems and unsafe conditions"); *cf. Matter of C-I-G-M- & L-V-S-G-*, 29 I. & N. Dec. 291, 294-95 (BIA 2025) (concluding that the Attorney General and the Secretary of DHS have the sole authority to determine whether the designated third countries offer full and fair procedures).[10]

The first Trump administration entered into ACAs with El Salvador, Guatemala, and Honduras. *See* 84 Fed. Reg. at 63994. The current Trump administration has added ACAs with Ecuador, Uganda, Guatemala, and Paraguay, and expanded the agreement with Honduras. *See, e.g.*, 90 Fed. Reg. 51376 (Ecuador); 90 Fed. Reg. 42597-01 (Uganda); 90 Fed. Reg. 31670 (Guatemala); 90 Fed. Reg. 60114 (Paraguay); 90 Fed. Reg. 30076 (Honduras). In immigration proceedings held in Portland, Oregon, the government has been increasing its requests to pretermit asylum applications in § 1229a proceedings on the basis of an ACA, particularly after the Board of Immigration Appeals ("BIA") issued its precedential opinion on October 31, 2025 in *Matter of C-I-G-M- & L-V-S-G-*, siding with the administration. *See* Declaration of Jennifer Rotman ("Rotman Decl.") ¶¶ 3-4 (ECF 24-1).

**B.  Factual Background**

Plaintiff is a national of Colombia who fled persecution after being stalked and raped by a Colombian cartel member. Compl. Intro. She entered the United States near Del Rio, Texas on May 16, 2022. ECF 8-1 at 1. She was apprehended by agents of CPB on May 17, 2022. *Id.*; *see also* Declaration of Jeffrey Chan ("Chan Decl.") ¶ 3 (ECF 17). Pursuant to 8 U.S.C. § 1225(b)(1), she was determined to be inadmissible to enter the United States under 8 U.S.C. § 1182(a)(7)(A)(i)(I) because she did not possess valid entry documents. *See* ECF 8-1 at 1 (citing INA Section 212(a)(7)(A)(i)(I), which is codified at 8 U.S.C. § 1182(a)(7)(A)(i)(I)). Plaintiff

---

[10] The legality of any aspect of the rule is not before the Court.

explained that she was seeking protection in the United States because of a fear of persecution in Colombia. Compl. ¶ 14.

Plaintiff was not scheduled for an expedited removal credible fear interview as required under 8 U.S.C. § 1225(b)(1)(A)(ii) and 8 C.F.R. § 235.3(b)(4). Nor was she issued an expedited order of removal—that portion of her form I-860 was left blank. ECF 8-1. On May 27, 2022, ICE released Plaintiff on parole under § 1182(d)(5)(A). ECF 28 at 7-8. ICE ordered Plaintiff to next report to Portland ICE in person, and also ordered Plaintiff to report any address changes to the "the Immigration Judge" at a Portland, Oregon address. *Id.* at 8. When Plaintiff reported as required in Portland, Defendants issued her an ICE Form I-220A, releasing her on her own recognizance. ECF 28 at 3-6 ("Form I-220A"). Defendants contend that they issued the Form I-220A as a means to monitor Plaintiff until her (unscheduled) credible fear interview. Chan Decl. ¶ 6. The Form I-220A, however, specifically references § 1226, which applies when a noncitizen is in § 1229a removal proceedings. *See* Form I-220A at 1 (stating that "[y]ou have been arrested and placed in removal proceedings. In accordance with section 236 of the Immigration and Nationality Act [codified at 8 U.S.C. § 1226] and the applicable provisions of Title 8 of the Code of Federal Regulations, you are being released on your own recognizance"). This reference was not crossed out or otherwise indicated as inapplicable.

ICE required Plaintiff to check in periodically, and she has complied with all required check-ins. Compl. ¶ 16; *see also* Form I-220A (check-in requirement); ECF 8-2 (check-in compliance). The government, however, did not issue Plaintiff a Notice to Appear in immigration court for her removal proceedings, nor schedule a credible fear interview in expedited removal proceedings, nor otherwise proceed with expedited removal. To preserve her ability to seek protection in the United States, on September 6, 2023, Plaintiff filed her I-589 Application. ECF 8-3.

PAGE 15 – OPINION AND ORDER

On September 16, 2023, USCIS acknowledged receipt of Plaintiff's I-589 Application. *Id.* On September 22, 2023, related to her I-589 Application, USCIS sent Plaintiff a notice requesting that she appear on October 13, 2023, for a biometrics appointment. ECF 8-4. On March 9, 2024, USCIS granted Plaintiff an EAD, under Class 08, authorizing her to work in the United States from March 8, 2024, to March 7, 2029. ECF 8-5. Class 08 indicates an asylum applicant. USCIS EAD Categories; *see also* EAD Code Table. Approval for asylum applicants under class 08 is different from approving persons in expedited removal paroled under 8 U.S.C. § 1182(d)(5), who would be approved under Class 11. *See* EAD Code Table.

USCIS sent Plaintiff a Notice of Dismissal of Form I-589, which was dated June 9, 2025. ECF 8-6. This notice explained that USCIS could not process Plaintiff's I-589 Application because Plaintiff was "apprehended by DHS officials, placed in expedited removal, and issued a Form I-860, Notice and Order of Expedited Removal." *Id.* at 1. On July 14, 2025, Plaintiff filed this lawsuit, and on August 27th she filed the pending motion for preliminary injunction. All of Plaintiff's immigration documents—*e.g.*, her interim parole, the acceptance of her I-589 Application, her EAD, her dismissal letter—contain Plaintiff's "file number" or "A number" with her unique identifying immigration case number.

After Plaintiff filed this lawsuit and her motion for preliminary injunction, Defendants attempted to schedule for September 19, 2025, Plaintiff's credible fear interview under the expedited removal process. Chan Decl. ¶ 8. Defendants then issued Plaintiff a Notice to Appear on September 4, 2025, commencing § 1229a proceedings, "with the understanding that Plaintiff did not desire to proceed with a credible fear interview." Chan Decl. ¶ 9; ECF 17-1. The Notice to Appear charged Plaintiff with being inadmissible under § 1182(a)(6)(A)(i), "in that you are an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the [Secretary of DHS]." ECF 17-1 at 1.

PAGE 16 – OPINION AND ORDER

**DISCUSSION**

Defendants originally argued that Plaintiff is not likely to succeed on the merits because she fails to challenge any final agency action. Defendants contended that because they had issued the Notice to Appear in September 2025 and started Plaintiff's § 1229a removal proceedings, she could pursue a defensive asylum application in those proceedings and thus there was no final agency action. Defendants also argued that even if USCIS's decision to dismiss Plaintiff's asylum application was a final agency action under the APA, Plaintiff could not succeed on the merits because she could not show that USCIS's conduct was arbitrary or capricious. Defendants based this argument on the contention that Plaintiff failed to show that the conclusion that she was in expedited removal was erroneous. Defendants further argued that Plaintiff fails to show irreparable harm.

Because Defendants' first argument was based on Defendants' post-lawsuit conduct, the Court requested supplemental briefing on the voluntary cessation doctrine. In their supplemental brief, Defendants stated that they were not arguing mootness, and were instead arguing that the Court has no jurisdiction to provide the relief requested by Plaintiff. Defendants had not previously raised a question regarding the Court's jurisdiction and provided no legal authority and little argument supporting this contention in their supplemental brief or at oral argument. Nonetheless, the Court must assure be of its subject matter jurisdiction. *See, e.g., Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (stating that courts "have an independent obligation to determine whether subject-matter jurisdiction exists"). Thus Court begins with this argument.

**A.  Jurisdiction**

**1.  Standing**

The U.S. Constitution confers limited authority on the federal courts to hear only active cases or controversies brought by persons who demonstrate standing. *See Spokeo, Inc. v.*

*Robins*, 578 U.S. 330, 337-38 (2016); *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90-91 (2013). Standing "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo*, 578 U.S. at 338.

"To demonstrate standing, a plaintiff must show that it has '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *United States v. King County*, 122 F.4th 740, 750 (9th Cir. 2024) (quoting *Spokeo*, 578 U.S. at 338). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "To establish redressability, plaintiffs must allege that it is 'likely, as opposed to merely speculative,' that a favorable decision will redress their injuries." *Winsor v. Sequoia Benefits & Ins. Servs., LLC*, 62 F.4th 517, 525 (9th Cir. 2023) (quoting *Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care*, 968 F.3d 738, 749 (9th Cir. 2020)).

"The existence of standing turns on the facts as they existed at the time the plaintiff filed the complaint." *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 838 (9th Cir. 2007). Whether standing and the other requirements for a live case or controversy exists throughout the entirety of a case is considered under the doctrine of mootness. *See United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980) ("The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." (quotation marks omitted)); *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1253 (9th Cir. 2007) (noting that mootness is the doctrine under which courts ensure that "a live controversy [exists] at all stages of the litigation, not simply at the time plaintiff filed the complaint"). The doctrine of mootness is more complex, however, than simply "standing set in a

PAGE 18 – OPINION AND ORDER

time frame," because it has exceptions that do not apply to standing and because there may be circumstances in which certain factors are viewed more flexibly in considering mootness than they would be in considering standing. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189-92 (2000); *see also Karuk Tribe of Cal. v. U.S. Forest Serv.*, 681 F.3d 1006, 1017 (9th Cir. 2012) (noting that "[t]he Supreme Court has emphasized that the doctrine of mootness is more flexible than other strands of justiciability doctrine" (quotation marks omitted)).

## 2.  Standards for Review under the APA

"The APA establishes a basic presumption of judicial review for one suffering legal wrong because of agency action. That presumption can be rebutted by a showing that the relevant statute precludes review, § 701(a)(1), or that the agency action is committed to agency discretion by law, § 701(a)(2)." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 16-17 (2020) (cleaned up). "[O]nly upon a showing of 'clear and convincing evidence' of a contrary legislative intent should the courts restrict access to judicial review." *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 141 (1967) (citing *Rusk v. Cort*, 369 U.S. 367, 379-80 (1962)). Further, the Supreme Court has read the "committed to agency discretion" exception "quite narrowly, restricting it to 'those rare circumstances where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.'" *Dep't of Com. v. New York*, 588 U.S. 752, 772 (2019).

In deciding whether a statute bars judicial review of an administrative determination, the Supreme Court has emphasized "a familiar principle of statutory construction: the presumption favoring judicial review of administrative action." *Kucana v. Holder*, 558 U.S. 233, 251 (2010). "When a statute is reasonably susceptible to divergent interpretation, we adopt the reading that accords with traditional understandings and basic principles: that executive determinations

PAGE 19 – OPINION AND ORDER

generally are subject to judicial review." *Id.* (quotation marks omitted). The presumption of reviewability has been "consistently applied" to immigration statutes and can be overcome only by "clear and convincing evidence of congressional intent to preclude judicial review." *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 229 (2020) (quotation marks omitted).

### 3. Analysis of Jurisdiction to Consider Plaintiff's APA Claim

Plaintiff brings her APA claims under § 706(2), arguing that Defendants' dismissal of Plaintiff's I-589 Application without following the statutory steps such as providing an asylum interview violated the law and was arbitrary and capricious. In other words, Plaintiff argues that Defendants were required to consider her application before dismissing it.

Defendants' jurisdictional argument was not presented with ideal clarity. Their opening brief did not directly challenge the Court's jurisdiction. Their supplemental brief stated that "Plaintiff is required to be in some form of removal proceedings since she has no legal status in the United States" and that the Court "never had jurisdiction over the relief Plaintiff seeks in this lawsuit to begin with, never will, and that only DHS has the authority to determine whether Plaintiff is placed in removal proceedings due to her unlawful status in the country." ECF 25 at 3-4. At oral argument, Defendants argued that Plaintiff could not affirmatively apply for asylum, and thus the Court could not order Defendants to rescind their dismissal and consider her application.

Defendants do not cite any statutory provision limiting the Court's subject matter jurisdiction conferred by the APA. They also do not argue that DHS exercised discretionary authority based on a statute or regulatory provision that is drawn in a manner providing no meaningful standard for a court to review. Thus, they do not argue either of the exceptions limiting review of an APA claim. What Defendants appear to be arguing is that Plaintiff fails to establish Article III standing for lack of redressability.

PAGE 20 – OPINION AND ORDER

At oral argument, Defendants provided two arguments for their contention that the Court has no jurisdiction because it would be unable to provide the relief Plaintiff requests. First, Defendants contend that Plaintiff could not affirmatively apply for asylum because she was in expedited removal. Second, Defendants assert that Plaintiff could never affirmatively apply for asylum because she has no legal status. Defendants contend that a person without legal status must be in removal proceedings and can only either go through the truncated asylum process in expedited removal or the defensive asylum application in § 1229a removal, but can never affirmatively apply for asylum. The Court addresses each argument in turn.

### a.   Whether Plaintiff was in Expedited Removal When She Applied

Defendants assert that Plaintiff was in expedited removal proceedings when she submitted her I-589 Application; thus, she could not affirmatively apply for asylum, and therefore she cannot ask the Court to require Defendants to adjudicate that improper application. Defendants appear to base this argument on the fact that they initially detained Plaintiff under § 1225(b)(1) and issued Plaintiff a Form I-860. Most of the form, however, was left blank. Defendants had not issued Plaintiff an expedited removal *order*. As noted above, that portion of her Form I-860 was left blank. The only portion that was filled out was the *notice* portion, informing her of the basis of the finding of her inadmissibility.

Defendants also note that they released Plaintiff in May 2022 on parole under § 1182(d)(5). Defendants give little weight to all of their conduct after that date, providing the excuse that they were overwhelmed and ignorant of the facts within their own department.[11] The Court, however, finds persuasive the governing law and the contemporaneous documents.

---

[11] The Court does not find persuasive government counsel's argument at the hearing that USCIS did not know when it accepted Plaintiff's I-589 Application and continued to move forward with the application that Plaintiff had originally been placed in expedited removal. Her I-589 Application and all the subsequent documents relating to that application had the same

PAGE 21 – OPINION AND ORDER

The governing statute, regulations, and USCIS guidance show the fast-tracking nature of expedited removal.[12] The credible fear interview is meant to be promptly scheduled. USCIS has explained that the credible fear interview should take place after 48 hours but can take "up to several months." *See* U.S. Immigration and Customs Enforcement, *LOP General Orientation Addendum: A Guide to Summary Removal Proceedings and Fear Interviews*, https://portal.ice.gov/pdf/LOPPdf/ER_Reinstatement/ExpeditedRemoval&ReinstatementofRemoval_Script_(English)508.pdf (last visited Mar. 17, 2026). USCIS also explains that for the credible fear interview process to commence, ICE or CPB must issue the noncitizen a Form M-444, Information About Credible Fear Interview, and that "[t]he Asylum Division cannot proceed with a credible fear interview of an alien unless the credible fear referral packet includes a completed Form M-444." U.S. Immigration and Customs Enforcement, *Credible Fear Procedures Manual*, at Section III.C., https://www.uscis.gov/sites/default/files/document/guides/CredibleFearProceduresManual.pdf (last visited Mar. 17, 2026). Defendants offer no evidence that they issued Plaintiff a Form M-444. Further, the regulations emphasize the "screening" nature of the credible fear interview, which shows how the interviews are intended to be early in the immigration process. *See* 8 C.F.R. § 208.30(e)(7)(i)(A).

Additionally, if USCIS finds credible fear and retains jurisdiction, the regulations require that USCIS hold an additional interview between 21 and 45 days from the credible fear

---

identifying number as the original (not fully completed) Notice and Order of Expedited Removal and the Interim Notice Authorizing Parole.

[12] Courts describe expedited removal as a fast-tracking process. *See, e.g., Oliveros v. Kaiser*, 2025 WL 2430495, at *1 (N.D. Cal. Aug. 22, 2025) ("At that hearing, the Government moved to dismiss the case in order to initiate fast-track 'expedited removal' proceedings."); *Ramirez Clavijo v. Kaiser*, 2025 WL 2419263, at *2 (N.D. Cal. Aug. 21, 2025) (stating that the immigration judge "informed Petitioner that the Government had moved to dismiss her case in order to initiate fast-track 'expedited removal' proceedings").

determination, *id.* § 208.9(a)(1), and issue a final opinion within 60 days from the credible fear

determination, *id.* § 208.9(e)(2). If USCIS finds no credible fear and the noncitizen appeals to an

immigration judge, the immigration judge should ideally review within 24 hours, but must

review within seven days, 8 U.S.C. § 1225(b)(1)(B)(iii)(III), and there is no further appeal, *id.*

§ 1225(b)(1)(C), (D). These truncated deadlines show how quickly the expedited removal

process is intended to move. Indeed, Defendants point out in their response that Congress

intended expedited removal as a process "to have the merits of [a noncitizen's] claim *promptly*

assessed by officers with full professional training in adjudicating asylum claims." ECF 16 at 10

(emphasis added) (quoting H.R. Conf. Rep. No. 828, 104th Cong., 2d Sess. 209 (1996)).

Plaintiff was released from custody in May 2022. Defendants, however, did nothing

related to her "expedited" removal until three years later, in September 2025, after she filed this

lawsuit and the pending preliminary injunction motion. Only then did Respondents attempt to

schedule Plaintiff's credible fear interview.[13] This delay is inconsistent with the statutory

framework and the purpose of expedited removal. It does not support Defendants' argument that

Plaintiff continued to remain in expedited removal.

Plaintiff filed her I-589 Application nearly 16 months after her May 2022 release, after

Respondents had done nothing on Plaintiff's "expedited" removal, request for asylum upon her

original detention, or her § 1229a removal proceedings after issuing her the Form I-220A.

Defendants accepted this application, which is inconsistent with Plaintiff being in expedited

removal. Further, the subsequent conduct by Defendants—scheduling and engaging in Plaintiff's

biometrics appointment in October 2023, granting her an EAD associated with her asylum

---

[13] Indeed, when Defendants dismissed Plaintiff's pending affirmative asylum application, they did not at that time move forward with her purported (now three-year) pending expedited removal proceeding, by scheduling a credible fear interview.

application in March 2024, and issuing that EAD under class 08 instead of class 11—all support a finding that she was *not* in expedited removal proceedings when she applied for asylum and thereafter.

Additionally, Plaintiff was released on her own recognizance in June 2022, when she was issued a Form I-220A. Plaintiff's Form I-220A states that it is issued under § 1226 and relates to removal proceedings. Section 1226 necessary relates to 1229a removal proceedings, and this type of release is separate from § 1182(d)(5) parole. *See Martinez v. Hyde*, 792 F. Supp. 3d 211, 215 (D. Mass. 2025) ("Release on recognizance is not 'humanitarian' or 'public benefit' 'parole into the United States' under section 1182(d)(5)(A) but rather a form of 'conditional parole' from detention upon a charge of removability, authorized under section 1226." (quoting *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115-16 (9th Cir. 2007))); *see also Chavarria*, 2025 WL 3533606, at *3 (recognizing the distinct release procedures between parole under § 1182(d)(5)(A) and conditional release under § 1226(a)); *Hasan*, 800 F. Supp. 3d at 655 (stating that release under § 1226(a)(2)(B) is legally distinct from parole under § 1182(d)(5)(A)). Defendants argue in its early brief that DHS may not "ignore" the original Form I-860 (which was mostly blank), but DHS also could not ignore this Form I-220A. When Plaintiff was issued a form releasing her on her own recognizance, she was no longer in expedited removal proceedings.

Defendants, however, state that Plaintiff was issued the Form I-220A only to apply monitoring conditions, and that her release remained under her § 1182(d)(5) parole from May 2022. Nothing in her Form I-220A, however, states that it is so limited. Defendants did not even cross out the statement in the Form I-220A that Plaintiff was placed in "removal proceedings" and that the monitoring conditions were under § 1226. The Court finds persuasive the contemporaneous docfuments, not post hoc rationalizations.

PAGE 24 – OPINION AND ORDER

Defendants also offer no authority that a person released on § 1182(d)(5) parole cannot later be released on their own recognizance under § 1226(a). To the extent Plaintiff initially was detained under expedited removal, it makes sense that later she was released with a Form I-220A under § 1226(a) when she was going to be processed through regular removal proceedings. Indeed, USCIS issued Plaintiff's EAD under Class 08, for asylum applicants, and not Class 11, for § 1182(d)(5) parolees. Based on the documentation, after Plaintiff's initial detention and release, Defendants uniformly treated Plaintiff as if she was not in expedited removal.

Additionally, accepting Defendants' argument would leave noncitizens in Plaintiff's situation in a perilous position. After starting with expedited removal proceedings and being released on parole, the noncitizen later receives a document that states that the noncitizen is now in regular removal proceedings. But after 16 months USCIS has not initiated the removal proceedings by issuing a Notice to Appear (or filing it in immigration court, which is the act that confers jurisdiction to the immigration judge). Thus, under the regulations, the immigration judge does not yet have jurisdiction and USCIS still has jurisdiction. It does not appear that the noncitizen is in expedited removal on the face of the documents given to the noncitizen, nor has a credible fear interview been scheduled, which is contrary to the "prompt" adjudication expected from expedited removal. The INA only allows 12 months to apply for asylum. 8 U.S.C. § 1158(a)(2)(B). If the noncitizen waits too much longer, the exemption for extraordinary circumstances, *id.* § 1158(a)(2)(D), might not be granted. Defendants' position requires the noncitizen to wait indefinitely until USCIS either moves forward with expedited removal and schedules a credible fear interview, or moves forward with regular removal and issues a Notice to Appear, risking an eventual denial of a defensive asylum application as untimely. The Court rejects this contention.

PAGE 25 – OPINION AND ORDER

Moreover, Defendants' argument would have perverse results. As discussed in the next section, the plain text of 8 U.S.C. § 1158(a)(1) establishes that noncitizens present in the country may apply for asylum regardless of legal status or where they entered the country. Under Defendants' interpretation of asylum law for persons who started in USCIS custody, a noncitizen who is paroled under § 1182(d)(5) or released under § 1226(a) and thus has permission to be in the United States, cannot affirmatively apply for asylum when USCIS fails to initiate removal proceedings within the allotted 12 months for asylum applications. That person, lawfully in the United States, risks losing their ability to apply for asylum because they must wait indefinitely for USCIS's next move. Meanwhile, a person who crosses the border illegally and is physically present in the United States for nearly 12 months without the knowledge of USCIS, has the right to apply for asylum. The Court rejects construing the law to reach such an absurd result.

### b.   Whether Plaintiff's Legal Status Prevented her From Applying

At oral argument Defendants also raised that Plaintiff could "never" file an affirmative asylum application because that "lane" only is available to applicants who are in the country legally, such as persons with visas, and is not available to noncitizens without "legal status." Defendants asserted that Plaintiff is limited to a defensive application in removal proceedings or the truncated procedure in expedited removal proceedings. Defendants argued that a noncitizen with no legal status must always be in either expedited or regular removal proceedings, which precludes the ability to affirmatively file for asylum. Thus, concluded Defendants, because Plaintiff could not affirmatively file for asylum before USCIS, the Court cannot provide the remedy sought by Plaintiff in this lawsuit and has no jurisdiction. Defendants offered no authority for any of these contentions.

Defendants' assertion that only persons with legal status can affirmatively apply for asylum is contrary to the text of the statute and governing regulations, and USCIS's own

PAGE 26 – OPINION AND ORDER

interpretation of the standards for affirmative asylum applications.[14] The governing statute, 8 U.S.C. § 1158, establishes that a noncitizen may apply for asylum "*irrespective of such alien's status*" or whether the noncitizen arrived at a designated port of entry, so long as the noncitizen is "physically present" in the United States and applies within one year of entry. 8 U.S.C. § 1158(a)(1), (a)(2)(B). The instructions on USCIS Form I-589 reiterate these eligibility requirements. Neither the statute nor the application form distinguishes between affirmative and defensive applications for noncitizens without legal status, or place any restriction of legal status for affirmative applications.

Similarly, 8 C.F.R. § 208.2 makes this point clear when establishing USCIS's jurisdiction. The first subsection governs USCIS's authority. It first provides authority over affirmative applications, and states that USCIS shall have initial jurisdiction over the asylum application of any "alien" who is "physically present in the United States."[15] 8 C.F.R. § 208.2(a)(1)(i). This broad grant of authority to USCIS over affirmative asylum applications contains no legal status limitation. This provision next describes USCIS's authority over asylum claims in expedited removal. *Id.* § 208.2(a)(1)(ii). The second subsection authorizes the immigration court's jurisdiction for noncitizens who specifically have been served certain forms triggering that court's jurisdiction. *Id.* § 208.2(b). The broad grant of authority in § 208.2(a)(1)(i) over affirmative asylum claims without distinction of legal status, in contrast to the narrow,

---

[14] It also is contrary to Defendants' description of the governing law in their opening brief. *See* ECF 16 at 13 (explaining the three ways a noncitizen may seek asylum as (1) that a noncitizen may affirmatively apply for asylum so long as "she *is not in* any kind of removal proceeding"; (2) that a noncitizen may file an application as a "defense to removal before the [immigration judge]"; and (3) that noncitizens subject to expedited removal can express a fear of persecution and will be given a credible fear interview) (emphasis added).

[15] As previously noted, "alien" is broadly defined in the INA as "any person not a citizen or national of the United States." 8 U.S.C. § 1101(a)(3).

specific grant of authority under expedited removal and to the immigration court further detract from Defendants' position here.

Further, 8 C.F.R. § 208.14(c) establishes the process for asylum officers denying, referring, or dismissing affirmative asylum applications.[16] It instructs that after the interview (or if the interview was missed or otherwise deemed waived), asylum officers who are denying asylum applications for an applicant "who appears to be inadmissible or deportable under section 212(a) [8 U.S.C. § 1182(a)] or 237(a) [8 U.S.C. § 1227(a)] of the Act" shall refer that applicant to an immigration judge. *Id.* § 208.14(c)(1). This is different from the instructions for an applicant in valid status, for whom the asylum officer must simply deny the application. *Id.* § 208.14(c)(2). The regulation also instructs on how to handle applicants who have been paroled and who have been paroled but the parole has expired. *Id.* § 208.14(c)(3)-(4). All but the second subsection would be rendered meaningless under Defendants' argument, which is that no affirmative asylum application can progress if the applicant has no valid status. "It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)).

In sum, the plain text of 8 U.S.C. § 1158(a) and relevant regulations governing asylum applications show that noncitizens present in the United States regardless of status may affirmatively apply for asylum to USCIS, and that it is a separate process from seeking asylum in expedited removal and as a defense in regular removal. *See, e.g.*, DEBORAH E. ANKER & JEFFREY S. CHASE, LAW OF ASYLUM IN THE UNITED STATES App'x A § A2:2 (2025 ed.) ("In general,

---

[16] Instructions for granting applications are contained in 8 C.F.R. § 208.14(b).

noncitizens who are physically present in the United States or who arrive in the United States (whether or not at designated ports of entry) may apply affirmatively for asylum under § 208 of the INA regardless of whether they have legal status in the United States. Noncitizens who have been placed into removal proceedings under § 240 of the INA, noncitizens who are subject to expedited removal proceedings, and noncitizens who are subject to reinstated removal orders are ineligible to affirmatively apply for asylum." (footnoted citations omitted)).

Additionally, USCIS itself instructs that noncitizens without legal status may submit an affirmative application for asylum. On its webpage *The Affirmative Asylum Process*, in the section titled "Apply for Asylum" USCIS explains how to affirmatively apply (submitting USCIS Form I-589), and in a subsection titled "Bars to Applying for Asylum" describes the potential bars to applying. https://www.uscis.gov/humanitarian/refugees-and-asylum/asylum/the-affirmative-asylum-process (last reviewed/updated Oct. 17, 2025). USCIS does *not* list as a potential bar the lack of legal status. *Id.*

Further, on its webpage *Questions and Answers: Affirmative Asylum Eligibility and Applications*, USCIS states under "Who is Eligible" that "[y]ou may apply for asylum if you are at a port of entry or in the United States. You may apply for asylum regardless of your immigration status and within 1 year of your arrival to the United States." https://www.uscis.gov/humanitarian/ refugees-and-asylum/asylum/affirmative-asylum-frequently-asked-questions/questions-and-answers-affirmative-asylum-eligibility-and-applications (last updated Nov. 21, 2025). USCIS further states under "Can I Still Apply for Asylum Even if I Am in the United States Illegally?":

> Yes. You may apply for asylum with USCIS regardless of your immigration status if:
>
> · You are not currently in removal proceedings

· You file an asylum application within 1 year of arriving to the
United States or demonstrate that you are within an exception to
that rule.

*Id.* Thus, USCIS's own admissions show that it construes its governing statutes and regulations as allowing noncitizens without legal status to file affirmative asylum applications.

Considering the plain text of the governing statute and regulations and USCIS's own descriptions of how the affirmative asylum process works, Defendants' current argument that Plaintiff could not pursue an affirmative asylum application because Plaintiff does not have lawful status is not persuasive. As Defendants themselves explained in their first response brief,

For noncitizens not in expedited removal, where to file the Form I-589 depends on whether USCIS or an [immigration judge] has jurisdiction over the application. A noncitizen who is physically present in the United States may affirmatively apply for asylum with USCIS. . . . Whenever DHS issues a Notice to Appear and files it with the immigration court, the noncitizen is placed in 1229a removal proceedings. Once that happens, a claim of asylum is treated as a defense to removal.

ECF 16 at 14 (quotation marks and citations omitted). At the time Plaintiff filed her I-589 Application, DHS had *not* yet issued a Notice to Appear. And, as the Court found above, the evidence shows that she was not in expedited removal. Thus, as a noncitizen physically present in the United States who was not in expedited removal or within the jurisdiction of the immigration court, she *was* able to file her I-589 Application.

This also forecloses Defendants' later argument that a noncitizen without legal status must always be in expedited or regular removal proceedings. Again, Defendants offer no legal authority for this proposition. As set forth above, however, Defendants conceded in their opening brief that this is not so. A noncitizen who is not in expedited removal but has not yet been issued a Notice to Appear is not *in* removal proceedings. And that noncitizen *can* file an affirmative

PAGE 30 – OPINION AND ORDER

asylum application. *See* 8 C.F.R. 208.2; *see also* 8 U.S.C. § 1158(a)(1). That is precisely the position of Plaintiff when she filed her I-589 Application.

### c. Effect of the Notice to Appear

Defendants did not raise a clearly articulated argument about the effect of the Notice to Appear. Defendants stated in their first brief, in arguing that their conduct was not arbitrary and capricious, that after issuing the Notice to Appear, the immigration judge has sole jurisdiction over Plaintiff's asylum claim, citing 8 C.F.R. § 208.2(b) and *Dzheligov v. DHS*, 2024 WL 51280, at *3 (D. Md. Jan. 4, 2024). Defendants also stated in their supplemental brief that the Court could not grant the relief requested by Plaintiff because the Court could not require DHS to adjudicate Plaintiff's asylum claim. The Court construes these comments as arguing that the issuance of the Notice to Appear and filing it in immigration court deprives this Court of subject matter jurisdiction because Plaintiff cannot obtain the remedy requested—that DHS adjudicate her asylum application that now is within the exclusive purview of the immigration court. Because the Notice to Appear was issued and lodged with the immigration court months after this case was filed, the Court evaluates it under the rubric of mootness. The Court must evaluate mootness *sua sponte*. *See Dittman v. California*, 191 F.3d 1020, 1025 (9th Cir. 1999).

Under 8 C.F.R. § 208.2(b), "Immigration judges shall have exclusive jurisdiction over asylum applications filed by an alien who has been served a . . . Form I-862, Notice to Appear, after the charging document has been filed with the Immigration Court." Generally, courts have relied on this provision to dismiss cases where USCIS has acted upon an I-589 application and *referred* it to the immigration judge, as set forth in the regulations. *See, e.g., Tchetgnia v. Sec'y, Dep't of Homeland Sec.*, 2025 WL 2772889 (S.D. Ohio Sept. 26, 2025) (finding case moot because USCIS referred I-589 application to immigration court and issued notice to appear); *Tu v. Mayorkas*, 2024 WL 2111551, at *3 (E.D.N.Y. May 10, 2024) (finding case moot where

PAGE 31 – OPINION AND ORDER

USCIS adjudicated I-589 application, found no credible fear, referred to immigration court, and issued notice to appear). Defendants did not do that here—they did not act upon Plaintiff's I-589 Application on the merits and they did not refer it to immigration court.

In *Dzheligov*, USCIS did not act upon the plaintiff's application on the merits, but closed it administratively. 2024 WL 51280, at *1. USCIS did, however, refer the petition to immigration court, and then granted the plaintiff's employment authorization while waiting for the immigration judge to adjudicate removal and the pending asylum application. *Id.* The judge in *Dzheligov* concluded that although some errors were made by USCIS, such as administratively closing the case on the mistaken belief that a notice to appear had been docketed in immigration court, there was "no legal basis upon which to find that any errors by USCIS" provided a basis to permit the court to require USCIS to adjudicate the asylum application. *Id.* at *3. The court dismissed the case as moot. *Id.* at *1.

Defendants' current actions are dramatically distinct as compared to conduct challenged in other cases. As previously explained, Defendants recently began a widespread, unlawful pattern of dismissing asylum seekers' cases in immigration court and detaining them. As described further below, Defendants also have begun deporting asylum seekers to third countries that do not have proper asylum safeguards. Defendants also recently have engaged with other asylum applicants similar to how they treated Plaintiff—dismissing pending I-589 applications based on purported expedited dismissal orders when the order was left blank and then concluding the applicant was subject to expedited removal. *See, e.g.*, *Aviles-Mena v. Kaiser*, 2025 WL 2578215, at *4-5 (N.D. Cal. Sept. 5, 2025) (rejecting, in the habeas context, that the noncitizen was subject to expedited removal and issuing preliminary injunction ordering his release). Further, Defendants did not follow their governing regulations in handling Plaintiff's

PAGE 32 – OPINION AND ORDER

asylum claim. All of this conduct demonstrates a lack of intent to comply with statutory and regulatory requirements.

The Court finds that DHS may not blatantly violate its governing statutes and regulations and then simply issue a notice to appear after a lawsuit has been filed and thereby strip itself and the Court of jurisdiction. If that notice to appear is improper and is an attempt to manipulate jurisdiction to avoid complying with legal requirements, the Court concludes that it can provide at least some relief requested by Plaintiff; thus The court has have Article III jurisdiction.[17] Defendants routinely dismiss their cases before immigration court so they may detain and deport asylum applicants. They can do so upon this Court's order so they can adjudicate an asylum application, if Plaintiff prevails. Additionally, as discussed below, the Court applies the voluntary cessation exception to mootness at this stage.

### d.  Other Jurisdictional Bars

The Court independently has considered 8 U.S.C. § 1252(g),[18] and does not find that it precludes jurisdiction in this case. The Supreme Court in *Reno v. American-Arab Anti-Discrimination Committee* ("*American-Arab*"), repeatedly described this provision as "narrow."

---

[17] It is sufficient for jurisdictional purposes that the Court can grant some relief that Plaintiff requests—it can, for example, enjoin DHS from placing Plaintiff in expedited removal proceedings or detaining her. *See Knox v. Serv. Emps. Intern. Union, Local 1000*, 567 U.S. 298, 307 (2012) ("A case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." (quotations omitted)). Even if Plaintiff is, following the Notice to Appear, subject to removal proceedings, she retains a "concrete interest" in the outcome of this litigation. *Ellis v. Railway Clerks*, 466 U.S. 435, 442 (1984). Namely, that those removal proceedings go to plan and that she is not illegally detained during those proceedings in violation of her constitutional rights.

[18] This provision provides, in relevant part: "Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."

*See* 525 U.S. 471, 482, 487 (1999). The Supreme Court explained that § 1252(g) was "directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion." *Id.* at 485 n. 9. The court in *American-Arab* provided examples of events that would be reviewable even with this provision, including a decision to reschedule a deportation hearing and a decision "to include various provisions in the final order that is the product of the adjudication." *Id.* at 482. The court stated that the provision applies only to its three discrete events, encompassing "'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders.'" *Id.* at 482 (emphases omitted).

But "[i]n this context, the meaning of a discretionary decision to 'adjudicate' is readily apparent: the discretionary, quasi-prosecutorial decisions by asylum officers and [ICE] district directors to adjudicate cases or to refer them to [immigration judges]." *Barahona-Gomez v. Reno*, 236 F.3d 1115, 1120 (9th Cir. 2001) (footnote omitted). An asylum "officer meets informally with the applicant, considers the documents presented with the asylum application, then decides whether asylum should be granted or whether the matter should be referred to an [immigration judge] for formal adjudication. In other words, the asylum officer *decides* whether the removal action should be 'abandoned' and asylum granted, or whether the formal adjudicatory process should proceed." *Id.* (emphasis in original) (citations omitted). "It is this very decision to either abandon the endeavor or to adjudicate it that Congress wished to preserve from judicial review." *Id.* (quotation marks omitted). No such decision occurred here. Plaintiff's claims are better "characterized as collateral legal challenges . . . that do not challenge Defendant[s'] discretionary authority, even though the answer to the legal questions may form the backdrop against which the Defendants may later exercise discretionary authority." *See Garcia v. Noem*, 2025 WL 3257553, at *2 (W.D. Wash. Nov. 22, 2025) (cleaned up).

PAGE 34 – OPINION AND ORDER

Independently considering its jurisdiction to review Plaintiff's APA claim, the Court concludes that it has jurisdiction in this case. There is nothing inherently special about asylum applications that preclude review under the APA. For example, courts have accepted jurisdiction to consider claims under § 706(1) of the APA relating to asylum applications, in which the plaintiffs alleged that USCIS unreasonably delayed adjudicating their asylum application. *See, e.g.*, *Dumlu v. Edlow*, 2025 WL 3190886, at *3 (C.D. Cal. Oct. 2, 2025); *Mahmoud v. Mayorkas*, 2025 WL 2816795, at *4 (N.D. Tex. Aug. 22, 2025), *report and recommendation adopted*, 2025 WL 2691995 (N.D. Tex. Sept. 22, 2025). Instead, for Plaintiff's claim under 5 U.S.C. § 706(2) to be reviewable, the Court must ensure that there was final agency action, discussed next. *See* 5 U.S.C. § 704.

## B.  Final Agency Action

For an agency action to be reviewable under the APA, it must be "final." *Id.* An agency action is final when the challenged action (1) "marks the consummation of the agency's decisionmaking process," and (2) is an action "by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (cleaned up).

Plaintiff challenges USCIS's decision dismissing Plaintiff's I-589 Application without first adjudicating it. Plaintiff argues that is not an option under the INA after USCIS accepted the I-589 Application. Plaintiff contends USCIS's dismissal without considering her application was a final agency action because it is the consummation of USCIS's decision-making process with respect to Plaintiff's I-589 Application, the dismissal made a determination of her rights, and legal consequences flowed from the decision. These consequences include that Plaintiff faced being placed in expedited removal (and the loss of the due process protections of her § 1229a proceeding), the loss of her EAD, and dismissal without consideration of a new, defensive

PAGE 35 – OPINION AND ORDER

application for asylum raised in her § 1229a proceedings under new theories recently being pursued by Defendants.

Defendants contended in their early briefing that USCIS's decision was not a final agency action because months after this lawsuit was filed and several weeks after the motion for preliminary injunction was filed, DHS issued Plaintiff a Notice to Appear, initiating removal proceedings under § 1229a. Defendants argued that Plaintiff can raise her claim for asylum in that proceeding and thus the dismissal was not a final agency action. Defendants' supplemental brief focused on their jurisdictional attack based on Plaintiff's inability to file her I-589 application, rejected above, but there are also several flaws in Defendants' original argument.

First, Defendants' only argument that USCIS's dismissal of Plaintiff's I-589 Application was not a final agency action is based on Defendants' post-lawsuit conduct. They make no argument that the dismissal itself, at the time it was made, was not a final agency action. Section § 1158 and its implementing regulations discuss USCIS's adjudication of affirmative asylum applications in mandatory terms. The Court finds that, without that post-lawsuit conduct, Defendants' dismissal without consideration was a final agency action.[19]

Second, the Court considers Defendants' post-lawsuit conduct under the voluntary cessation doctrine.[20] This exception requires that a party claiming mootness based on the

---

[19] This case is unlike *Cabaccang v. U.S. Citizenship and Immigration Services*, where the Ninth Circuit concluded that a denial on the merits of an adjustment of status application by USCIS was "not yet a final administrative action" because of the plaintiffs' "right to renew their applications before the [immigration judge.]" 627 F.3d 1313, 1316 (9th Cir. 2010). That right to renew was set forth in the governing regulations at 8 C.F.R. § 245.2(a)(5)(ii). This case would be like *Cabaccang* if USCIS reviewed Plaintiff's application on the merits and denied it. Then it would be referred to an immigration judge for further review under 8 C.F.R. § 208.14(c)(1). But USCIS did not do that—they refused to consider Plaintiff's application and instead dismissed it.

[20] The Court requested supplemental briefing to address the voluntary cessation doctrine. ECF 23. Defendants did not address the merits the voluntary cessation doctrine, other than stating that they were not asserting the doctrine, which the Court construes as a statement that

PAGE 36 – OPINION AND ORDER

voluntary cessation of conduct has a "heavy" burden to show that it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *W. Va. v. Env't Prot. Agency*, 597 U.S. 697, 719-20 (2022) (quotation marks omitted); *see also FBI v. Fikre*, 601 U.S. 234, 241 (2024) (stating that a defendant has a "formidable burden" of meeting the voluntary cessation exception because "a defendant's 'voluntary cessation of a challenged practice' will moot a case only if the defendant can show that the practice cannot 'reasonably be expected to recur'" (quoting *Laidlaw*, 528 U.S. at 189)). The doctrine is particularly concerned with litigants attempting to "manipulate the Court's jurisdiction." *See City of Erie v. Pap's A.M.*, 529 U.S. 277, 288 (2000); *Samma v. Dep't of Def.*, 136 F.4th 1108, 1114 (D.C. Cir. 2025).

Defendants' post-lawsuit conduct does not make it "absolutely clear" that they will not again refuse to fully adjudicate Plaintiff's asylum claim. After this lawsuit was filed, Defendants first tried to schedule a credible fear interview, which only happens when a noncitizen is in expedited removal proceedings. As discussed above, those proceedings provide much less due process protection that do regular removal proceedings. Shortly thereafter, Defendants initiated Plaintiff's § 1229a proceedings with the Notice to Appear. That, however, is a separate type of proceeding under a completely different statutory framework and provides different rights and protections. It also is inconsistent with Defendants' assertion that Plaintiff was in expedited removal, which was the sole basis of DHS's original denial of Plaintiff's I-589 Application.

---

they were not asserting mootness. Although Defendants were not styling their argument as claiming mootness, the Court pointed out in its request for supplemental briefing that Defendants argued that their initiation of removal proceedings after this lawsuit was filed affected the status of this lawsuit. That, in effect, is an argument of mootness. Indeed, the case cited by Defendants (*Dzheligov*) resolved the issue of whether a notice to appear affected the district court lawsuit on mootness grounds.

PAGE 37 – OPINION AND ORDER

Expedited removal and § 1229a removal are two different pathways for adjudicating immigration cases.

The Court also takes no comfort in Defendants' late initiation of § 1229a proceedings, because, since June, Defendants routinely have dismissed such proceedings and placed noncitizens into expedited removal, even when improper. *See Salcedo Aceros*, 2025 WL 2637503, at *4. Further, as pointed out by Plaintiff in her supplemental brief, in the past several months Defendants have been moving to dismiss asylum applications in § 1229a proceedings under the "safe country" bar. The BIA issued a precedential opinion requiring immigration judges to dismiss such applications unless the noncitizen proves, without the benefit of a full evidentiary hearing, that it is more likely than not that he or she will be persecuted in the third country, which cannot be shown if the noncitizen does not have a history with the proposed safe country. *Matter of C-I-G-M- & L-V-S-G-*, 29 I. & N. Dec. at 294-96.

At this point, it is unclear what process Defendants intend to follow or what statutory basis they believe governs Plaintiff's asylum claim and potential detention.[21] Defendants' conduct litigating asylum cases since June, however, overwhelmingly shows that they are likely to dismiss any asylum claim Plaintiff would bring in § 1229a proceedings. The Court finds that

---

[21] At oral argument counsel for Defendants stated that Defendants consider Plaintiff in § 1229a proceedings but that they also would place Plaintiff in expedited removal proceedings if Plaintiff would prefer. Plaintiff's eligibility for expedited removal, however, is set by statute, not personal preference. As discussed below, she is not subject to expedited removal. Defendants' argument to the contrary is similar to arguments the government has raised in the habeas context, when the government subjects noncitizens to detention under the expedited removal statute, and courts evaluate whether a noncitizen living in this country is subject to detention under that statute or § 1226(a). "Every district court to address this question has concluded" that the government's interpretation is wrong and noncitizens residing here are not subject to expedited removal. *See Rodriguez v. Bostock*, 802 F. Supp. 3d 1297, 1303-04 (W.D. Wash. 2025); *see also Rodriguez Cabrera*, 2025 WL 3072687, at *3; *Perez*, 2025 WL 3171742, at *4; *Faizyan*, 2025 WL 3208844, at *5.

under these circumstances DHS's dismissal of Plaintiff's I-589 Application constitutes final agency action.

## C. Mandatory vs. Prohibitory Injunction

As part of her requested relief, Plaintiff asks that the Court order Defendants to reinstate Plaintiff's I-589 Application and order Defendants to schedule Plaintiff's asylum interview. Defendants argue that this seeks a mandatory injunction. Plaintiff disagrees, arguing that this would merely maintain the status quo during the pendency of this case, contending that her pending I-589 Application was the last uncontested status between the parties.

When considering a mandatory versus prohibitory injunction, "the status quo is 'the legally relevant relationship between the parties before the controversy arose.'" *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 684 (9th Cir. 2023) (en banc) (quoting *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1061 (9th Cir. 2014)). "While there is no bright line rule for when a controversy arises," a court must look to the claims, the parties' relationship, and the conduct giving rise to the controversy. *See id.* at 684-85. The Ninth Circuit has discussed examples, such as when a new law and a new policy went into effect before the lawsuit was filed, as altering the status quo because the defendants' conduct "affirmatively changed" the position between the parties. *Id.* (discussing *Ariz. Dream Act Coal.* and applying the status quo rule to the underlying case facts).

Applying the Ninth Circuit's en banc directive, the Court concludes that Plaintiff is requesting a prohibitory injunction. Plaintiff's I-589 Application was pending before USCIS for nearly two years, with all indications that it was actively being considered (*e.g.*, setting biometrics, Class 08 EAD approval). USCIS later dismissed Plaintiff's application, and Plaintiff challenges that dismissal. Thus, the pending application is the last pre-controversy status quo. Because the I-589 Application's dismissal "'affirmatively changed' that status quo and

Plaintiff['s] motion for a preliminary injunction seeks to restore that status quo, the relief sought is properly viewed as a prohibitory injunction." *See Fellowship of Christian Athletes*, 82 F.4th at 685.[22]

## D.  Evaluation of the Merits

### 1.  Arbitrary and Capricious

Defendants argue that Plaintiff cannot show that Defendants' conduct was arbitrary and capricious because USCIS did not have jurisdiction over Plaintiff's asylum application because she was in expedited removal. As discussed above, the Court rejects that argument. It is not credible that Plaintiff was in expedited removal in September 2023, let alone that she was in expedited removal on June 9, 2025, more than three years after she was released. Thus, Plaintiff is likely to succeed on her argument that Defendants' conduct was arbitrary and capricious because DHS "offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *State Farm*, 463 U.S. at 43. DHS did not "articulate[] a satisfactory explanation for its action" that included "a rational connection between the facts found and the choice made." *All. for the Wild Rockies*, 68 F.4th at 493 (cleaned up).

### 2.  Violation of Law and Actions Taken in Excess of Statutory Authority

Defendants do not respond to Plaintiff's argument that Defendants' conduct violated the APA because it was in violation of 8 U.S.C. § 1158 and its governing regulations, and in excess of Defendants' statutory authority. The statute and regulations are worded in mandatory terms.

---

[22] The government raised at oral argument that Plaintiff's EAD may have been terminated. Plaintiff had discussed in her briefing the potential future harm of having that document terminated. It appears any termination of Plaintiff's EAD was after this lawsuit was filed. Even if it were before the lawsuit was filed and contemporaneous with the dismissal of Plaintiff's I-589 Application, however, ordering its reinstatement would be a prohibitory injunction restoring Plaintiff to the status quo pending the duration of this case.

The statute requires that USCIS "shall" commence the initial interview or hearing within a certain time and "shall" complete the final adjudication of an asylum application within a certain time. *See* 8 U.S.C. § 1158(d)(5)(A)(ii)-(iii). The regulations require that USCIS, when it has jurisdiction over an asylum application, "shall adjudicate the claim" when the application is complete, in accordance with § 1158. 8 C.F.R. § 208.9(a). Defendants did none of this, and dismissed Plaintiff's application without following any of the regulations' standards for denial, dismissal, referral, solely on the ground that she was in expedited removal, which the Court has rejected. Thus, Plaintiff is likely to succeed on her claim that USCIS had a nondiscretionary duty to adjudicate her asylum claim and violated that duty.

For the same reasons the Court finds that Plaintiff is likely to succeed on the merits in arguing that Defendants violated § 1158, the Court concludes that Plaintiff is likely to succeed in arguing that Defendants violated the APA because their conduct violated § 1158 and its governing regulations.

### E. Irreparable Harm

Claimed irreparable injury must not be speculative. "A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief." *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1022 (9th Cir. 2016) (quoting *Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988)) (emphasis in *Caribbean Marine*). "A threat of irreparable harm is sufficiently immediate to warrant preliminary injunctive relief if the plaintiff 'is likely to suffer irreparable harm before a decision on the merits can be rendered.'" *Id.* at 1023 (quoting *Winter*, 555 U.S. at 22).

Defendants only agreed to Plaintiff's release from detention through the resolution of this preliminary injunction motion. Based on Defendants' overwhelming conduct in immigration

PAGE 41 – OPINION AND ORDER

cases, it is highly likely that Defendants will detain Plaintiff if no injunction is issued. The Ninth Circuit has acknowledged the "irreparable harms imposed on anyone subject to immigration detention" including "the economic burdens imposed on detainees and their families as a result of detention." *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017).

In *Boardman*, the Ninth Circuit found sufficiently immediate harm even though for the plaintiff to be injured, the defendants would have had to give 60-days' notice and then not have the district court otherwise intervene, or negotiate in secret and reach a form of deal not considered a "purchase agreement," or other steps that arguably were attenuated or provided the plaintiffs some opportunity to request emergency relief. *Boardman*, 822 F.3d at 1020-25. Here, Plaintiff's threatened irreparable harm is much less attenuated. Plaintiff is likely to suffer irreparable harm because Defendants can immediately detain her before the Court can intervene. Defendants also can move her outside the District of Oregon, potentially creating jurisdictional problems.

Plaintiff also shows a likelihood of irreparable harm with the loss of her EAD, associated with her current I-589 Application. Without it, she cannot work, which is her sole source of economic support. Although purely monetary damages usually are not considered irreparable, they may be if the harm "has a profound and immediate impact on [the plaintiff's] livelihood." *Torres Hernandez v. Stewart*, 2021 WL 6274440, at \*10 (E.D. Wash. Mar. 1, 2021) (gathering cases); *see also Kildare v. Saenz*, 325 F.3d 1078, 1083 (9th Cir. 2003) (explaining that "economic hardship constitutes irreparable harm: back payments cannot 'erase either the experience or the entire effect of several months without food, shelter or other necessities'" (quoting *Briggs v. Sullivan*, 886 F.2d 1132, 1140 (9th Cir.1989)); *Familias Unidas por la Justicia, AFL-CIO v. United States Dep't of Lab.*, 2024 WL 3276419, at \*8 (W.D. Wash. July 2, 2024), *opinion clarified*, 2025 WL 963246 (W.D. Wash. Mar. 31, 2025) (gathering cases).

PAGE 42 – OPINION AND ORDER

## F.  Balance of the Equities and Public Interest

Defendants argue that these factors weigh in their favor because control over immigration is a sovereign prerogative and Plaintiff applied for asylum when she was in expedited removal. As discussed above, the Court rejects Defendants' latter contention. Plaintiff was not in expedited removal when she applied for asylum. Regarding executive control over immigration, Defendants "have no interest in erroneously enforcing the wrong law, as they have done here." *Garcia Mariagua v. Chestnut*, 2025 WL 3551700, at *4 (E.D. Cal. Dec. 11, 2025).

In the Ninth Circuit, however, a preliminary injunction is disfavored when it is "identical to the ultimate relief sought in the case." *Progressive Democrats for Soc. Just. v. Bonta*, 2021 WL 6496784, at *11 (N.D. Cal. July 16, 2021) (citing *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 808-09 (9th Cir. 1963); *see also Hubner v. Mayer*, 2015 WL 12513581, at *10 (C.D. Cal. June 8, 2015) (finding the plaintiff's request for preliminary injunction "especially problematic given that this is the final relief Plaintiffs seek, but ask for it now, on a preliminary basis"). As the Ninth Circuit explained in *Tanner*,

> It is so well settled as not to require citation of authority that the usual function of a preliminary injunction is to preserve the *status quo ante litem* pending a determination of the action on the merits. The hearing is not to be transformed into a trial of the merits of the action upon affidavits, and it is not usually proper to grant the moving party the full relief to which he might be entitled if successful at the conclusion of a trial.

*Tanner*, 316 F.2d at 808.

Part of the relief requested by Plaintiff is identical to the ultimate relief sought—that the Court order Defendants to rescind the June 9, 2025 dismissal of Plaintiff's I-589 Application and reinstate her application. The Court balances all the equities, including the Ninth Circuit's view on providing ultimate relief on a preliminary basis, and considering the public interest. The Court finds that a preliminary injunction is appropriate to keep Plaintiff within this Court's jurisdiction

PAGE 43 – OPINION AND ORDER

and preserve her ability to work, but not to grant on a preliminary injunction her the ultimate relief she seeks of requiring USCIS to reinstate her I-589 Application.

## G. Bond

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Court has "discretion as to the amount of security required, *if any.*" *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (emphasis in original) (quoting *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999)). Additionally, the Court "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Id.* The "[government] cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from" violating the law. *See Zepeda v. U.S. INS*, 753 F.2d 719, 727 (9th Cir. 1983). Thus, the Court finds that no security is required here.

## PRELIMINARY INJUNCTION

IT IS HEREBY ORDERED that the Court GRANTS IN PART Plaintiffs' Motion for Preliminary Injunction and until this Court orders otherwise, or until such time as the parties agree in writing to amend, supersede, or terminate this Preliminary Injunction:

1. Defendants shall not place Plaintiff in expedited removal proceedings under 8 U.S.C. § 1225(b)(1);

2. Defendants shall not remove Plaintiff from the District of Oregon without further order of the Court;

3. Defendants shall reissue Plaintiff's employment authorization document if it has been terminated;

PAGE 44 – OPINION AND ORDER

4.  Defendants shall not terminate Plaintiff's current or reinstated employment authorization document without further order of the Court; and

5.  Defendants shall not detain Plaintiff without further order of the Court.

**CONCLUSION**

The Court GRANTS IN PART Plaintiff's Motion for a Preliminary Injunction, ECF 13, as set forth in this Opinion and Order. The parties shall confer and set a schedule for final resolution of this case.

**IT IS SO ORDERED.**

DATED this 25th day of March, 2026.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge

PAGE 45 – OPINION AND ORDER